IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **WANDA F. MOORE**, | Case No. 3:11-cv-01289-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **MICHAEL ASTRUE**, Commissioner Social Security Administration, | |
| Defendant. | |

Lisa R. Porter, KP Law LLC, 16200 S.W. Pacific Highway, Suite H-233, Portland, Oregon 97224. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97201; Jeffrey R. McClain, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

PAGE 1, OPINION AND ORDER

**SIMON, District Judge.**

Plaintiff Wanda Moore ("Moore") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") finding her not disabled and denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.

## I.   BACKGROUND

**A.    The Plaintiff**

Ms. Moore was born in 1965. Tr.149. (Dkt. 11.) She has an eleventh-grade education. Tr. 177. She applied for benefits on January 21, 2009, alleging disability since December 2, 2008. Tr. 149, 151. Ms. Moore claims that her disability is due to anxiety and panic attacks. Tr. 173. The Commissioner denied the applications initially and upon reconsideration. Tr. 87-100. An Administrative Law Judge ("ALJ") held a hearing on July 13, 2010. Tr. 37-86. On July 20, 2010, the ALJ found Ms. Moore to be not disabled. Tr. 20-31. On September 21, 2011, the Appeals Council accepted additional evidence into the record, but declined to review the ALJ's decision. Tr. 1-4. This action made the ALJ's decision the final decision of the Commissioner, subject to review by this court. 20 C.F.R. § 410.670a.

**B.    The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

PAGE 2, OPINION AND ORDER

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, he is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

PAGE 3, OPINION AND ORDER

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

C. **The ALJ's Decision**

At step one of the sequential analysis, the ALJ found that Ms. Moore had not performed substantial gainful activity since December 2, 2008, her alleged onset date. Tr. 22. At step two, the ALJ found Ms. Moore's depression and anxiety to be "severe." *Id.* At step three, the ALJ found that these impairments did not meet or equal a listed disorder. Tr. 23. The ALJ then found that Ms. Moore retained the RFC to perform work light work with nonexertional limitations. Tr. 18. The ALJ explained:

> [T]he claimant has the residual functional capacity to perform light work . . . and specifically: she can lift 20 twenty pounds occasionally and ten pounds frequently; she can stand and/or walk up to six hours a day; she can sit up to six hours a day; she is limited to simple, routine tasks, and should have no interaction with the public and only occasional interaction with coworkers.

Tr. 24. At step four, the ALJ found that this RFC precluded performance of Ms. Moore's past relevant work. Tr. 29. Based upon the Commissioner's regulations and the testimony of a vocational expert, the ALJ found at step five that Ms. Moore could perform work that existed in significant numbers in the national economy. Tr. 30. The ALJ therefore found Ms. Moore not disabled. Tr. 31.

## II.   STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

### III.  DISCUSSION

Ms. Moore asserts that the ALJ erroneously: (1) assessed her credibility; (2) evaluated the lay witness testimony; (3) failed to develop the record; (4) erroneously assessed her RFC; and (5) found that she could perform work in the national economy. Ms. Moore contends that she is disabled under the Commissioner's regulations.

**A.    Ms. Moore's Credibility**

Ms. Moore argues that the ALJ improperly rejected her testimony regarding her symptoms. Pl.'s Opening Br. 16. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work record and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

PAGE 7, OPINION AND ORDER

Ms. Moore specifically asserts that the ALJ erroneously addressed her: (1) alleged incontinence; (2) activities of daily living; (3) part-time work; and (4) infrequent visits to healthcare providers.

### 1. Alleged Incontinence

Ms. Moore challenges the ALJ's rejection of her testimony specifically pertaining to her alleged incontinence. Pl.'s Opening Br. 18. The ALJ discussed the matter:

> Claimant testified that she has severe bladder control problems, and she has accidents every day, which require that she change her clothes and bathe. She estimates she spends four hours a day in the bathroom because of the need to urinate frequently. She testified "I figure that it's normal." This answer defies logic. It is hard to believe claimant would believe it is normal to spend four hours a day in the bathroom or to have bladder control accidents every day. Additionally, claimant's mother testified that she had never noticed claimant had any bladder problems. Tr. 29.

Ms. Moore did not allege disability due to any bladder dysfunction. Tr. 173. In response to direct inquiry, she did not indicate that her alleged impairment caused difficulty in her ability to "use the toilet." Tr. 188. Further, the medical record contains no evidence of such dysfunction, and Ms. Moore does not assert that it is a medically-established impairment.

An ALJ must provide clear and convincing reasons for rejecting a claimant's symptom testimony only after a claimant has established a medically-determinable impairment. *Smolen*, 80 F.3d at 1281-82. Ms. Moore has failed to make this showing, and the ALJ therefore was not required to make any findings rejecting her testimony on this matter, let alone state "clear and convincing" reasons.

### 2. Activities of Daily Living

The ALJ discussed Ms. Moore's activities of daily living. Tr. 23-24. Specifically, the ALJ noted that Ms. Moore drinks coffee, watches television, travels to town to visit her mother and children, prepares meals, does household chores, goes grocery shopping, and drives. Tr. 23.

PAGE 8, OPINION AND ORDER

The ALJ also noted that Ms. Moore works three or four hours per day, attends church, socializes with her boyfriend and family, and pays bills. Tr. 23.

Ms. Moore asserts that these activities are not "mutually exclusive" and that a claimant need not "vegetate in a dark room." Pl.'s Opening Br. 17. Ms. Moore apparently means that her activities are not "mutually exclusive" with her allegation of disability. An ALJ, however, may consider a claimant's activities that are inconsistent with an allegation of disability. *Lingenfelter*, 504 F.3d at 1040 (citing *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell*, 947 F.2d at 346; *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989)). Such activities may be grounds for discrediting a claimant's testimony of impairment "to the extent they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citing *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

In addition, a reviewing court must defer to an ALJ's interpretation of these activities where reasonable. *Rollins*, 261 F.3d at 857. The ALJ's citations are based upon Ms. Moore's own testimony. Tr. 4, 187, 191. This Court therefore finds reasonable the ALJ's conclusion that Ms. Moore's daily work activities, childcare, performance of household tasks, and social and other activities contradict her allegation of total disability.

### 3.    Work and Other Activities of Daily Living

Ms. Moore testified that she recently began working two to three hours per day, five days per week. Tr. 41-43. In her work history report to the Commissioner, Ms. Moore wrote, "I can't do all this again. I had my sister do it on the internet for me and that was way [too] much for me to handle. If someone could call me and go over it with me would be better if not just return this and I'll try to do it again." Tr. 179. She did not answer the remaining questions regarding her past jobs and duties. Tr. 180-86.

The ALJ stated that Ms. Moore's "ability to go to work part time every day as a home care worker conflicts dramatically with her statements regarding the severity of the impairment of her social functioning and concentration persistence and pace." Tr. 28. The ALJ also stated that Ms. Moore works two to three hours per day. Tr. 23.

Ms. Moore points to authority discussing sporadic part-time work. Pl.'s Opening Br. 17. Intermittent or short-term work activity may be consistent with a finding of disability. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); *Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001); *Gatliff v. Comm'r*, 172 F.3d 690, 694 (9th Cir. 1999). Although the ALJ may rely upon activity inconsistent with disability in rejecting a claimant's testimony, as discussed above, the Ninth Circuit does not permit an ALJ to reject a claimant's symptom testimony based upon sporadic work activity alone. The ALJ's finding that Ms. Moore's ability to work two to three hours per day undermines her symptom testimony may not be affirmed on this basis. As noted, however, the ALJ may consider a claimant's activities of daily living, and the ALJ may include work activities as part of this analysis. Therefore, the ALJ's reference to Ms. Moore's work activity, in concert with her other daily activities, is sufficient to support the ALJ's conclusion that her activities are inconsistent with her allegation of disabling impairment.

### 4.  Medical Record

The ALJ noted that Ms. Moore's medical record "reveals very infrequent trips to the doctor for the alleged disabling symptoms, and that [she] has received only routine or conservative treatment, which is generally not the type of medical treatment one would expect for a totally disabled individual." Tr. 26. Ms. Moore argues that "poverty is a legitimate reason to forgo medical treatment." Pl.'s Opening Br. 18. The record shows that treating physician Louise McHarris, D.O., reported that Ms. Moore "has not had a pap or mammogram in years because

she has not had health insurance." Tr. 297. Ms. Moore also stated that she does not take medications because she does not have insurance. Tr. 194. Ms. Moore points to no additional instances in the medical record in support of her challenge to the ALJ's finding that she received routine and conservative care. Although an ALJ may not chastise a claimant for failing to follow treatment that she cannot afford, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995), the ALJ's finding that Ms. Moore received only routine and conservative treatment is based upon the record. Ms. Moore therefore fails to establish error.

In summary, Ms. Moore fails to establish that the ALJ erroneously evaluated the credibility of her symptom testimony. The ALJ's findings are affirmed.

**B.    Lay Testimony**

Ms. Moore argues that the ALJ improperly evaluated the lay testimony submitted by her mother Grace Schaefer, her sister Gloria Tucker, and her boyfriend Tony Lavoie. Pl.'s Opening Br. 21. The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 416.913(d); *Molina*, 674 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ also must provide germane reasons for rejecting lay testimony. *Molina*, 674 F.3d at 1114 (citing *Doddrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ, however, is not required to address each witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant that have been properly found not credible. *Molina*, 674 F.3d at 1114 (citing *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009)).

    **1.    Grace Schaefer**

Ms. Schaefer testified at Ms. Moore's hearing before the ALJ. Tr. 68-72. Ms. Schaefer stated that she sees Ms. Moore once or twice a month and that Ms. Moore "doesn't do a lot of

things that she used to do." Tr. 69. Ms. Schaefer stated that Ms. Moore must rest for 30 minutes after performing housework for only 10 or 15 minutes and while Ms. Moore performs work activities "faster" than most people, she also is not "not too good" at being effective. *Id.* Ms. Schaefer also reported that Ms. Moore becomes "upset, irrational," but seldom becomes angry. Tr. 70. In response to counsel's questioning, Ms. Shaefer testified that she had never observed that Ms. Moore had bladder trouble, although she does not see Ms. Moore frequently. Tr. 71. The ALJ summarized Ms. Shaefer's testimony and concluded:

> The undersigned accords some weight to the opinion of Ms. Shafer, as the record shows [Ms. Moore] has moderate limitations in social functioning and concentration persistence and pace. However, her opinion is accepted with some caution as her close relationship with the claimant and a desire to help the claimant likely influenced her opinion.

Tr. 27.

Ms. Moore correctly argues that the ALJ's statement concerning Ms. Schaefer's "close relationship" with Ms. Moore is insufficiently germane. Pl.'s Opening Br. 22. The Ninth Circuit has held that a claimant's friends and family members are "competent to testify as to [a claimant's] condition." *Doddrill*, 12 F.3d at 919. Further, this district has stated that if "the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, friends, or family) would ever be found credible." *Ratto v. Chater*, 839 F.Supp. 1415, 1429 (D. Or. 1993).

The Commissioner responds that an ALJ's notice of a "close relationship" is sufficient. Def.'s Br. 11. The Commissioner's authority concerns an ALJ's decision that refers to such a relationship as one of many reasons given for rejecting lay testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In Ms. Moore's case, however, the ALJ provided no other reasons

PAGE 12, OPINION AND ORDER

for rejecting Ms. Shaefer's testimony. *Greger* therefore is distinguishable. Thus, the ALJ did not provide sufficiently germane reasons for rejecting Ms. Shaefer's testimony.

An ALJ's error is harmless when it is "inconsequential to the ultimate nondisability determination." *Molina*, 774 F.3d at 1115 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2012)). Further, where "lay testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony" the reviewing court may deem the ALJ's error regarding the lay testimony harmless." *Molina*, 674 F.3d at 1117 (citing *Valentine*, 574 F.3d at 694). Because the ALJ's RFC restricted Ms. Moore to limited interpersonal interactions (Tr. 24), which account for the emotional limitations that Ms. Shaefer described, the only remaining limitations described by Ms. Shaefer relate to Ms. Moore's need to rest after performing housework. Because the ALJ properly disregarded Ms. Moore's own testimony that addressed her alleged fatigue and rest requirements, *supra*, 6-11, this Court finds no prejudicial error in the ALJ's improper rejection of Ms. Shaefer's statements addressing the same limitations.

### 2.    Gloria Tucker

Ms. Moore's sister, Gloria Tucker, also testified at Ms. Moore's hearing. Tr. 72-79. Ms. Tucker stated that she has seen Ms. Moore on four occasions between December 2008 and the July 2010 hearing before the ALJ. Tr. 73. Ms. Tucker testified that Ms. Moore tires easily and can perform household chores for no more than ten minutes before requiring rest. Tr. 73-74. Ms. Tucker stated that Ms. Moore has poor reading comprehension. Tr. 75.

The ALJ described Ms. Tucker's testimony in some detail, but accorded it "little weight," explaining that it was internally inconsistent and "fails to mention claimant is able to leave her

house every day to go to work as a home care worker, which conflicts with [Ms.] Tucker's statement that claimant's symptoms worsened after December 2009." *Id.* Where the ALJ gives germane reasons for rejecting testimony of one witness, he "need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (citing *Valentine*, 574 F.3d at 694). Here, the ALJ properly rejected Ms. Moore's testimony in part by pointing to her daily activities. The ALJ therefore properly rejected Ms. Tucker's testimony by pointing to those same activities.

### 3. Tony Lavoie

Ms. Moore's boyfriend, Tony Lavoie, submitted a written questionnaire to the record. Tr. 195-202. The ALJ discussed this evidence in some detail, but gave it "little weight." Tr. 27. The ALJ first found that Mr. Lavoie exaggerated Ms. Moore's limitations because he endorsed every task listed on the form other than those relating to Ms. Moore's use of her hands and ability to get along with others. *Id.* The ALJ also found this report contradicted by the medical record and Ms. Moore's own testimony regarding her ability to get along with others. *Id.* Finally, the ALJ rejected Mr. Lavoie's testimony because it was "influenced by his close relationship with the claimant and a desire to help her." *Id.*

The ALJ may reject lay testimony contradicted by the medical record, *Bayliss*, 427 F.3d at 1218, and may reject testimony based upon inconsistencies in testimony. *See Smolen*, 80 F.3d at 1284 (allowing rejection of internally inconsistent testimony). The ALJ's reference to the medical record and contradictions between Mr. Lavoie's testimony and that of Ms. Moore are therefore affirmed. As discussed above, the ALJ may not reject lay testimony simply because the witness desires to help the claimant, and this reasoning is not sustained. The Court, however, may sustain an overall credibility finding when it declines to affirm one of several reasons

PAGE 14, OPINION AND ORDER

proffered by the ALJ. *Batson*, 359 F.3d at 1197. The ALJ's conclusion regarding Mr. Lavoie's testimony is affirmed.

C. The ALJ's Duty to Develop the Record

Ms. Moore also argues that the ALJ failed to develop the record. Pl.'s Opening Br. 19-21. Specifically, she contends that, based upon her own testimony, the ALJ should have developed the record regarding her alleged urinary incontinence, breathing problems and shortness of breath, right knee problems, "status post head injury," history of learning disability, dyslexia, swollen hands and feet, hand cramps, ankle pain, and history of various heart problems. Pl.'s Opening Br. 19-20. She cites only her own testimony and that of a lay witness regarding these alleged impairments. *Id.* at 20-21.

The ALJ has a duty to develop the record when the claimant's onset date is ambiguous, *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998), or when the record is too inadequate for the Commissioner to make a proper disability determination. 20 C.F.R. §§ 404.1513(3); 416.913(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ's duty is heightened when a claimant is unrepresented, *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003), but such reasoning does not apply when the record reflects no impairment or associated limitations. *Burch*, 400 F.3d at 682.

Ms. Moore originally alleged disability due to depression and anxiety disorders and did not indicate any of the physical impairments that she now cites. Tr. 173. Her administrative appeal of the Commissioner's initial determination cited an abnormal EKG and "av nodel reenterant tachycardia." Tr. 208. She also stated that a panic attack made her lightheaded, causing her to twist her left ankle. Tr. 232. She did not submit, however, any medical records supporting these allegations. The limited medical record before this Court shows repeated

emergency room visits for anxiety with heart palpations, but no further cardiac diagnoses. Ms. Moore bears the burden establishing disability, and the record before this Court does not suggest an ambiguity regarding further impairments. Further, the claimant was represented by an attorney. The ALJ therefore was not obligated to develop the record.

**D.     The ALJ's RFC Assessment**

The RFC is defined as the most that a claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). The Commissioner's regulations direct that the RFC is "based on all relevant evidence" in the record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). Social Security Ruling ("SSR") 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," defines the RFC assessment and instructs the ALJ to make narrative findings in construing a claimant's RFC. SSR 96-8p (*available at* 1996 WL 374184 at *2, 7). The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address both the claimant's exceptional and nonexertional capacity. *Id.* at *5-6. Limitations supported by substantial evidence in the record must be incorporated into the RFC. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

    **1.     Regular and Continuing Work**

Ms. Moore argues that the ALJ failed to make findings of fact regarding her ability to perform regular and continuing work. Pl.'s Opening Br. 23. The claimant's RFC, by definition, represents work-related activities that the claimant may still perform on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); SSR 96-8p.  Ms. Moore's argument therefore fails.

///

///

### 2. Omitted Impairments

Ms. Moore argues that the ALJ did not address certain limitations, which she does not identify, but states were described by her own testimony and that of the lay witnesses. Pl.'s Opening Br. 24. Ms. Moore fails to show error in the ALJ's assessment of this evidence for the reasons already explained above. She therefore does not now establish that the ALJ improperly omitted associated required limitations from her RFC.

### 3. Unskilled Work

Ms. Moore argues that her allegedly reduced concentration is inconsistent with the restriction regarding unskilled work. Pl.'s Opening Br. 24. Although the ALJ did not explicitly discuss "unskilled" work, he find that Ms. Moore was restricted to "simple" work. Tr. 24. Under the law of the Ninth Circuit, there is no meaningful distinction here, and Ms. Moore's legal authorities come from outside of the circuit. The Ninth Circuit has held that there is no meaningful distinction among types of "simple" work and that legal error occurs only if relevant medical evidence points to inconsistencies between "simple" work and other limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008). Because Ms. Moore does not point to any specific limitations assessed by medical providers on this issue or establish that such limitations were improperly omitted by the ALJ, she fails to establish error under applicable Ninth Circuit precedent.

### 4. Lay Witness Testimony

Ms. Moore argues that the ALJ's RFC did not consider limitations described by Ms. Moore and the lay witnesses. Pl.'s Opening Br. 24. These arguments are discussed and rejected above.

///

### 5. Vocational Expert Testimony

Ms. Moore argues that the ALJ's RFC is insufficient because the vocational expert testified that additional limitations, which were not included in her RFC, would establish her inability to perform work in the national economy at step five in the sequential proceedings. Pl.'s Opening Br. 23-34. This argument is confused; the ALJ relies upon a vocational expert's testimony at steps four and five of the sequential proceedings only. 20 C.F.R. §§ 404.1560(b)(2) 404.1566(e); 416.960(b)(2); 416.966(e) . In doing so, the ALJ asks the vocational expert to consider an already-formulated RFC, which must include all properly-supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). No authority instructs that a vocational expert's testimony should influence the ALJ's determination of an claimant's RFC.

### 6. Mental RFC

Finally, Ms. Moore argues, "And, of course, the ALJ failed to formulate a Mental RFC." Pl.'s Opening Br. 24. She provides no further explanation for this statement. The ALJ included nonexertional limitations in Ms. Moore's RFC, specifically restricting her to simple, routine tasks, with no interaction with the public, and only occasional interaction with coworkers. Tr. 24. This argument is not based upon the record and therefore fails.

In summary, Ms. Moore establishes no error in the ALJ's RFC assessment.

### E. The ALJ's Step Five Findings

Ms. Moore argues that the ALJ erred at step five in the sequential proceedings. *Id.* at 24-25. She contends that the ALJ's hypothetical question posed to the vocational expert did not include a "comprehensive" RFC. *Id.* at 24. The ALJ, however, determines at step five if the claimant can perform work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). At this step, the ALJ may draw upon a vocational expert's testimony to show

that a claimant with a certain assumed RFC can perform such work. 20 C.F.R. §§ 404.1566(d-e); 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations, but may exclude unsupported limitations. *Osenbrock*, 240 F.3d at 1164-65. Because Ms. Moore fails to establish that the ALJ erroneously omitted limitations from her RFC, she has not established that the ALJ erred at step five.

## IV.    CONCLUSION

Ms. Moore fails to show that the ALJ erroneously evaluated her testimony, the lay witness testimony, or her RFC. The ALJ's decision is based upon the record and the correct legal standards. It is therefore AFFIRMED.

**IT IS SO ORDERED**.

DATED this 4th day of January, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 19, OPINION AND ORDER